## CITY OF DULUTH v. LEROY WENDLING.

237 N. W. 2d 79.

December 19, 1975—Nos. 45746, 45770.

*William P. Dinan,* City Attorney, and *C. Douglas Norberg,* Assistant City Attorney, for appellant.

*Crowley & Houge* and *Benjamin S. Houge,* for respondent.

*Randall D. B. Tigue,* for Minnesota Civil Liberties Union, amicus curiae, seeking affirmance.

PER CURIAM.

This is an appeal by the city of Duluth from an order of St. Louis County District Court granting a motion by defendant made pursuant to Minn. St. 626.21 for the return of a motion picture film which the city seized by authority of a warrant for use in criminal obscenity proceedings against defendant. The city contends that the district court erred when it concluded that a magistrate may not issue a warrant for the seizure of the only copy of an allegedly obscene film in the absence of a prior adversary hearing. The city contends, moreover, that there exists no constitutional requirement that the magistrate must actually view the film before issuing such a warrant. For the reasons stated below, we affirm the order granting the return of the movie to defendant subject to a protective order.

The facts are as follows: While contemplating prosecutions for the showing of obscene motion pictures in Duluth, the city attorney and one assistant held a meeting with two St. Louis County County Court judges and asked them if they would be willing to view allegedly obscene films for the purpose of determining whether there was probable cause for warrants to seize the films for use as evidence in the contemplated prosecutions. Both judges refused to go and refused to allow any judicial officers to go because they felt that it was unnecessary and inappropriate for them to do so. Thereafter, an assistant city attorney and a Duluth police officer went to the Strand Theater and

observed the film, "Ape Over Love," then showing at the theater. While viewing this film they took notes, and afterward they prepared the extensive scene-by-scene description of the film which they included in their application for a warrant.

On January 29, 1975, the officers obtained a search warrant from the St. Louis County County Court, immediately executed the warrant, and seized defendant's only copy of the film. At the time that the police executed the warrant, they notified defendant in writing that the film was being seized solely for use as evidence, that the city would appear at an adversary hearing at any reasonable time, and that the city would allow defendant to copy the film so that defendant could continue to show it during the pendency of the action. Later, police arrested defendant and charged him with exhibiting an obscene film in violation of Duluth City Code, 1959, § 34-12, as amended.

Defendant did not demand an adversary hearing or seek to have a copy of the film made but instead moved, pursuant to Minn. St. 626.21, for an order returning the film and suppressing its use as evidence. A hearing was held on this motion on February 20, 1975. In an order filed the following day, the district court (1) directed the city to return the film to defendant; (2) enjoined the city from seizing the film again until a prior adversary hearing is held; and (3) enjoined the city from concealing, destroying, or tampering with the film pending the outcome of the criminal proceedings against defendant. On March 6, 1975, the district court, after further proceedings, entered an order enjoining *defendant* from concealing, destroying, or tampering with the film until the criminal proceedings against defendant were completed. The city thereupon returned the film to defendant.

The city, not sure whether the proceedings authorized by § 626.21 are civil or criminal proceedings, has filed two notices of appeal, one pursuant to § 632.11 and one pursuant to the Rules of Civil Appellate Procedure.

■ We are met at the threshold by defendant's claim that this

appeal is moot because the Duluth ordinance under which defendant is being prosecuted (Duluth City Code, § 34-12, as amended by Ordinance 8019) has been suspended from going into operation by virtue of a referendum petition filed November 30, 1973. The facts underlying defendant's argument, however, show that argument to be without merit. In 1973 the city amended the ordinance (Duluth City Code, § 34-12) under which it is prosecuting defendant. Within 30 days, 10 percent of the voters who voted in the last general election filed a referendum petition challenging the amendment. This petition was valid and timely, Bogen v. Sheedy, 304 Minn. 62, 229 N. W. 2d 19 (1975), and thus the amendment (Ordinance 8019) was suspended from going into effect. However, the ordinance as it read prior to the amendment is still in effect, and thus the city may continue the prosecution under the unamended ordinance and this appeal is not moot.

■ The city's principal contention is that the trial court, in issuing the order returning the film to defendant, erred in concluding that a magistrate may not issue a warrant for the seizure of the exhibitor's only copy of allegedly obscene film in the absence of a prior adversary hearing. The city acknowledges that the trial court's action was proper under our holding in Johnson v. City of Rochester, 293 Minn. 156, 197 N. W. 2d 244 (1972), but contends that Johnson is no longer the controlling law in view of a more recent decision by the United States Supreme Court in Heller v. New York, 413 U. S. 483, 93 S. Ct. 2789, 37 L. ed. 2d 745 (1973). We disagree and find the instant case controlled by our decision in Johnson.

In Johnson we held that a warrant to seize the *only copy* of an allegedly obscene movie may not issue consistent with the First Amendment of the United States Constitution without a prior adversary hearing. We based our decision in Johnson upon prior decisions by the United States Supreme Court in Marcus v. Search Warrant of Property, 367 U. S. 717, 81 S. Ct. 1708, 6 L. ed. 2d 1127 (1961) ; A Quantity of Copies of Books v. Kansas,

378 U. S. 205, 84 S. Ct. 1723, 12 L. ed. 2d 809 (1964); Freedman v. Maryland, 380 U. S. 51, 85 S. Ct. 734, 13 L. ed. 2d 649 (1965); Lee Art Theatre, Inc. v. Virginia, 392 U. S. 636, 88 S. Ct. 2103, 20 L. ed. 2d 1313 (1968); Blount v. Rizzi, 400 U. S. 410, 91 S. Ct. 423, 27 L. ed. 2d 498 (1971).

The city contends Johnson was overruled sub silentio in Heller v. New York, *supra.* In Heller, the United States Supreme Court held that seizure of a certain film was constitutionally permissible if followed by a prompt judicial determination of the obscenity issue at the request of any interested party. We are not persuaded that Heller is controlling here, however, because in Heller the exhibitor failed to prove that the seized film was the only copy available for exhibition and that the actual exhibition of the film was restrained pending the postseizure hearing. As the Supreme Court stated, "There has been no showing that the seizure of a copy of the film precluded its continued exhibition." 413 U. S. 490, 93 S. Ct. 2793, 37 L. ed. 2d 753. In Heller, moreover, the exhibitor failed to make a pretrial motion for the return of the film. 413 U. S. 486, 93 S. Ct. 2791, 37 L. ed. 2d 750.

In the instant case defendant proved at the February 20, 1975, hearing that the seized film was his only copy and made a timely motion for the return of the seized film. Under the rule we set forth in Johnson, the trial court acted correctly in ordering the film returned to defendant pending a judicial determination of its alleged obscenity, the Heller decision notwithstanding. We acknowledge that there is language in Heller which would support the city's position that the seizure of the only copy of an allegedly obscene film is constitutionally permissible if provision is made for a prompt postseizure adversary hearing. See, 413 U. S. 492, 93 S. Ct. 2795, 37 L. ed. 2d 754. We are not convinced that such language is other than dicta, however, in view of the court's express declaration that "[t]here has been no showing that the seizure of a copy of the film precluded its continued exhibition." 413 U. S. 490, 93 S. Ct. 2793, 37 L. ed. 2d 753. We are not bound by, and do not choose to follow, dicta in Heller which

is inconsistent with our own application of the First Amendment in Johnson.

As we did in Johnson, we today again recognize the important interest which the prosecution has in preserving evidence for use in prosecutions for exhibiting obscene movies. We continue to believe, however, that this interest can be successfully safeguarded by a subpoena duces tecum or, as in the instant case, by a protective order forbidding defendant from concealing, destroying, or tampering with the film. We further believe that the adversary hearing mandated by Johnson is the most feasible and practical safeguard available to prevent the seizure of the only copy of an allegedly obscene film from acting as a prior restraint on free speech. If seizure is ordered after such a hearing, the exhibitor of the film as well as the public can best be assured that only such films as have been judicially determined to be obscene will be restrained pending trial.

■ Neither Heller nor Johnson directly addressed the issue of whether a magistrate must actually view the allegedly obscene film before issuing a warrant.[1] This question arises because judges are understandably reluctant to go to the theater and view such films during their public exhibition. We believe that such a direct viewing is not required, and that where an exhibitor has more than one copy of the film a magistrate may issue a warrant authorizing the seizure of an allegedly obscene film if the application for the warrant contains detailed factual information which makes it possible for the magistrate to focus searchingly on the question of whether or not the police have a probable cause to believe that the film is obscene. See, Marcus v. Search Warrant of Property, 367 U. S. 717, 732, 81 S. Ct. 1708, 1716, 6 L. ed. 2d 1127, 1136 (1961). Similarly, when a judge is considering the allegedly obscene character of a film in an adversary hearing, whether prior or subsequent to seizure, he may receive a copy

---

[1] In Heller v. New York, 413 U. S. 483, 488, 93 S. Ct. 2789, 2792, 37 L. ed. 2d 745, 752 (1973), the judge had viewed the entire film before issuing the warrant.

of the film as an exhibit and permit testimony as to the contents of the film from witnesses without being required to view the film himself. The trial judge may, of course, elect at any time during the hearing to view all or any part of the contested film personally when in his discretion such a viewing would be appropriate.

We therefore hold in this case that under Johnson v. City of Rochester, *supra,* the city did not have the authority to seize the film in question in the absence of a prior adversary hearing on the question of whether the film was obscene. The city's interest in preserving the film for use as evidence in its prosecution of defendant is served by the trial court's protective order forbidding defendant from concealing, destroying, or tampering with the film pending the outcome of the criminal proceedings.

Affirmed.